Steve Perry & TGBA
Texas Gamefowl Breeders Association
P.O. Box 235
Sutherland Springs, TX 78161
(979) 220-0535

Jose Salas
514 Chuckwagon
Eagle Pass, TX 78852
830-513-6387

Jorge Vasquez
4675 FM 1664
Quemado, TX 78877
830-278-4255

Plaintiffs in pro per

United States Courts
Southern District of Texas
**FILED**

**JUN 1 8 2021**

Nathan Ochsner, Clerk of Court

DISTRICT COURT OF THE UNITED STATES OF AMERICA
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION

| | |
|---|---|
| Steve Perry; Jose Salas; Jorge Vasquez, Texas Gamefowl Breeders Association,<br><br>     Plaintiffs,<br><br>  v.<br><br>PEOPLE OF THE STATE OF TEXAS;  Texas HOPKINS COUNTY in its corporate, municipal, and official capacity; HOPKINS COUNTY SHERIFFS DEPARTMENT in its corporate, municipal, and official capacity; Sheriff Lewis Tatum, individually and in his official capacity; Deputy Harry Washington, individually and in his official capacity; Deputy Corley Weatherford, individually and in his official capacity; Judge Amy Smith, individually and in her official capacity; County Attorney Dustanna Rabe, in her individual capacity and in her official capacity; Arturo Munoz, individually and in his official capacity; SPCA of Texas in its corporate and | CASE NUMBER: _____<br><br>Verified Complaint for Damages for:<br><br>1. Violation of Constitution and Civil Rights Title 42 U.S.C. §§ 1981, 1983, 1985(3), U.S. CONST. Amend. 1, 4, 5, 6, 8, 14<br><br>2. Conspiracy against rights under color, deprivation of rights under color, Discrimination, Hate Crimes, Bad Faith (Title 18 U.S.C. §§ 241, 242)<br><br>3. Interference with Commerce, Illegal Restraint of Trade (Hobbs Act, Sherman Anti-Trust, Title 15 U.S.C. §§ 1-7, Title 18 U.S.C. § 1964)<br><br>4. Theft; Theft of Livestock and equipment. (Title 18 U.S.C. § 667), receiving stolen property, transporting stolen property, laundering stolen property<br><br>5. Fraud and Swindle (Title 18 U.S.C. §§ 1343, 1346) |

The § symbols between columns: §§§§§§§§§§§§§§§§§§§§§

official capacity; and DOES 1 through 100, inclusive,,

          Defendants

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

6.    Denial of Intangible Right to Honest Services (Title 18 U.S.C. § 1346)

7.    Fraud, Aiding and Abetting, Civil Conspiracy

8.    Malicious Prosecution

9.    Legal Malpractice

10.   Racketeering (RICO), Extortion, Theft, Threat, Fear and Intimidation (Title 18 U.S.C. §§ 1951-1964)

11.   Unjust Enrichment

12.   Intentional Infliction of Emotional Distress

13.   Illegal Arrest, Detainment, Incarceration without just cause.

14.   Violation of Protected Rights; Violation of Texas Health & Safety Code §§ 821.021 et seq.; 821.022; 821.023; and especially 821.023(g).

15.   Violation of Texas Health & Safety Code § 821.003

16.   Intentional Animal Cruelty - Tex. Penal Code § 42.09(a)(1); failure to provide necessary food, water, or care (Class A, Tex. Penal Code § 42.09(a)(2); 61 chickens confined in a cruel manner in transport boxes overnight which caused unjustified or unwarranted pain or suffering for the 61 chickens, (Class A, Tex. Penal Code § 42.09(a)(4), § 42.09(b)(2);

17.   Accounting

DEMAND FOR JURY TRIAL

## JURISDICTION

1.     The United States District Court for the Southern District has jurisdiction over these

Defendants for violating federal laws governing interference with Interstate and Intrastate commerce,

state and federal programs directly or indirectly receiving federal funds, and for violating Plaintiffs'

civil and unalienable rights secured by Constitutions of the United States of America, the state of

Texas, and by Acts of Congress, including but not limited to Title 18 U.S.C. §§ 1001, 1343, 1346,

1621, 1622, 1623, 1951-1952, civil rights violations under Title 42 U.S.C. Civil Rights sections 1981,

1983, 1985(3), 1986 and 1988, which provide civil remedies authorized by law to redress the

deprivation of rights under color of law, statute, regulation, custom and usage of action proper under

Title 28 U.S.C. §§ 1331, 1343(a) (1, 2, 3 and 4), 1334, 1391(b), 1746, 2409(a),

2.      This Court also has jurisdiction regarding the administrative adjudication process of all

causes of action – criminal, and civil.

3.      Plaintiffs contend that this Court has jurisdiction over this action based on the grounds

that Defendants wrongfully, unlawfully and through acts under color of state law, racketeering and

corruption, stole Plaintiffs Texas Gamefowl Breeders and Steve Perry (TGBA, "us", "we", "our")

property consisting of 61 very rare Heritage Old English Gamefowl with bloodlines on the verge of

extinction, 11 transport boxes; vandalized and impounded Plaintiff Jorge Vasquez' white transport van

and seriously damaged his business reputation; fabricated a criminal case and wrongfully charged and

jailed Plaintiff Jose Salas without a warrant, forced him to appear a numerous court hearings at great

financial cost, damaged his reputation, and ultimately dismissed all charges against him.  Defendants

transported stolen property (chickens), laundered stolen property through the SPCA, and Sheriff Tatum

received 8 stolen Hens with irreplaceable bloodlines (called "adopted").  Plaintiffs contend that the

Defendants, and each of them, acted knowingly, intentionally, deliberately, maliciously, and *without*

*limitation*, in *continuous* violation of Plaintiffs' due process rights as afforded in the 1st, 4th, 5th, 6th, 7th,

and, *inter alia*, 14th Amendments to the United States Constitution, Title 42 U.S.C. §§ 1981, 1983,

1985(3), 1986, racketeering, and that defendants' knowing, *willful* and despicable conduct constitutes

false imprisonment, false charges/malicious prosecution, kidnapping, hate crime and campaign of hate against Plaintiff Jose Salas, as stated below.  The actions of Defendants are continuous and continuing.

## PARTIES

4.      Plaintiff Steve Perry ("Perry") is an American States citizen and the undisputable legal owner of six of the Heritage Old English Gamefowl fully described in Paragraph 1 above.  He is President of the Texas Gamefowl Breeders Association, P.O. Box 235, Sutherland Springs, TX 78161.

5.      Plaintiff Jorge Vasquez ("Vasquez") is an American States citizen, living at 4675 FM 1664, Quemado, TX 78877.  He has a Class I license to transport livestock, and is the undisputable legal owner of the white van which was seized, searched without a warrant, vandalized and torn apart by Hopkins County Jail Inmates, under the direction of Hopkins County Deputy Harry Washington, Hopkins County Sheriff's Department, and Hopkins County Jail.

6.      Plaintiff Jose Salas ("Salas") is an American States citizen, living at 514 Chuckwagon, Eagle Pass, TX 78852 who was an employed by Plaintiff Jorge Vasquez to drive the Vasquez's van and transport 61 chickens to a poultry show and auction.  He was stopped by Defendant Washington on June 20, 2017, seized and searched without a warrant, jailed overnight, the 61 chickens were stolen by Defendants, and Salas was charged with a crime he did not commit – charges ultimately dropped.

7.      Texas Gamefowl Breeders Association ("TGBA") is an association of poultry fanciers to preserve endangered Old English Gamefowl bloodlines, as well as to promote, breed, raise, and show Old English Gamefowl and educate the public.  TGBA and Steve Perry are the undisputable legal owners of 61 very rare Heritage Old English Gamefowl whose bloodlines are on the verge of extinction, which were illegally confiscated and stolen on June 20, 2017 by Hopkins County Sheriff Department, Hopkins County Sheriff Lewis Tatum, Hopkins County Sheriff Deputy Harry Washington, Hopkins County Sheriff Deputy Corey Weatherford, Arturo Munoz, and the SPCA of Texas.

8.       Defendant People of the State of Texas (State) governing body existing by virtue of the United States constitution, is hereby sued in its corporate and official capacities doing business from Texas State Capitol Building, Austin, TX.  Service of Process to be made with Texas Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079.

9.       Defendant Hopkins County, Texas, is hereby sued in its corporate and official capacities doing business from Sulphur Springs, Texas.  Service of Process to be made with Hopkins County Judge, 118 Church Street, Sulphur Springs, TX 75482.

10.       Defendant Hopkins County Sheriffs Department is hereby sued in its corporate, municipal, and official capacities, doing business from Sulphur Springs, Texas.  Service of Process to be made at Hopkins County Sheriffs Department, 298 Rosemont, Sulphur Springs, TX 75482.

11.       Defendant Lewis Tatum ("Tatum"), Hopkins County Sheriff, is hereby sued individually and in his official capacity, doing business from Hopkins County Sheriff Department, 298 Rosemont, Sulphur Springs, Texas 75482.  Tatum directed other Defendants to seize, rob and incarcerate Salas, steal the 61 chickens, launder them through the SPCA, then unjustly enrich himself by "adopting"/receiving stolen property/8 Hens with irreplaceable bloodlines.

12.       Defendant Harry Washington "Washington"), Hopkins County Sheriff Deputy, is hereby sued individually and in his official capacity, doing business from Hopkins County Sheriff Department, 298 Rosemont, Sulphur Springs, Texas 75482.  Washington detained Salas, searched and robbed him without a warrant, falsely charged and incarcerated him (all charges later dropped).

13.       Defendant Corley Weatherford ("Weatherford"), Hopkins County Sheriff Deputy is hereby sued individually and in his official capacity doing business from Hopkins County Sheriff Department, 298 Rosemont, Sulphur Springs, Texas 75482.  Weatherford aided and abetted other Defendants.

14.     Defendant Amy Smith ("Smith"), Hopkins County Court-At-Law Judge (retired) is hereby sued individually and in her official capacity, doing business from Hopkins County Court-At-Law, 118 Church Street, Sulphur Springs, Texas 75482.  Smith never held a hearing for Salas, never made a probable cause determination, and allowed other Defendants to terrorize and bully Salas under color.

15.     Defendant Dustanna Rabe ("Rabe"), Hopkins County Attorney, is hereby sued individually and in her official capacity, doing business from 128 Jefferson Street, Suite B, Sulphur Springs, Texas 75482.  Rabe had duties to ascertain the truth, never did, and upheld other Defendants' conspiracy, false charges and campaign of hate against Salas by pressuring him to take a "plea deal" when he was innocent and all charges finally dropped.

16.     Defendant Arturo Munoz ("Munoz") of the SPCA of Texas is hereby sued individually and in his official capacity, doing business from SPCA of Texas, 2400 Lone Star Drive, Dallas, Texas 75212.  Munoz, a private party, impersonated an officer, interrogated Salas, and used threat, fear and intimidation under color to force Salas into giving up his rights and sign away the 61 chickens that Salas did not own.  Munoz  received stolen property and laundered stolen property by giving Tatum 8 valuable Hens.  Munoz conspired with other Defendants to commit theft and racketeering.

17.     Defendant SPCA of Texas ("SPCA") is hereby sued in its corporate and official capacities doing business from Dallas.  According to the Texas Secretary of State, Service of Process is to be made with Karen Froehlich, 2400 Lone Star Drive, Dallas, Texas 75212.  SPCA's participation in theft of livestock had a de minimus impact on interstate trade so as to trigger RICO claim by Plaintiffs.

18.      Defendants DOES 1 through 100 inclusive, are hereby sued in their individual, official, municipal and corporate capacities as their identities become known through discovery.  Plaintiffs seek leave to amend this Complaint when said identities have been ascertained.

## STATEMENT OF CASE

19.     All Defendants except Munoz are public employees and agents of Hopkins County, who stole sixty-three heritage Old English Gamefowl belonging to Perry and TGBA without a court order or hearing, searched, tore apart and damaged Vasquez's 2009 white Ford van without a warrant, kidnapped and imprisoned Salas without a warrant or Miranda warning, allowed layman Art Munoz to act as a law enforcement officer and interrogator of Salas, allowed layman Art Munoz to steal all sixty-one heritage Old English Gamefowl, and subsequently falsely charged Salas based in Washington's inadmissible opinion, and extorted money from him.  Hopkins county sheriff Tatum unjustly enriched himself when he "adopted" 8 hens in his name and under his home address, committing first degree felony theft.  Judge Smith and Rabe continued the malicious prosecution of Salas, which was cruel and unusual punishment as Salas had to travel 500 miles from his home to court, charges later all dropped.

## STATEMENT OF FACTS

20.     On June 20, 2017, Jose Salas was driving a white van owned by Jorge Vazquez owner of an international poultry transport business.  Salas was employed by Vasquez.  Vasquez had contracted with the Steve Perry and the TGBA  to safely transport 61 very rare Heritage Old English Gamefowl.  These chickens are all very rare from vintage bloodlines which are on the verge of extinction. These chickens were to be displayed and shown at  the Texas Gamefowl Breeders Association (TGBA) meeting in Elmendorf, Texas on June 24, 2017, as well as the National Show sponsored by the United Gamefowl Breeders and its affiliates later that year in San Antonio, Texas.

21.     At approximately 5:30 pm Salas was traveling on Interstate 30 passing through Sulphur Springs, Texas, on his way to his last stop in Texarkana, before returning to south Texas. Salas was traveling in the left lane because the right lane was badly rutted, and the left lane was much smoother for the chickens he was transporting.  Around 5:30 pm, Salas was pulled over by Hopkins County

Sheriff Deputy Harry Washington ("Washington"), who first pulled alongside him to get a good look at Salas, then backed off, pulled in behind Salas, and subsequently pulled Salas over for "driving in the left lane."

22.      Washington questioned Salas about the chickens without an attorney present, and without handing Salas a warrant. Salas was in great fear, as Washington was armed, was African-American, Salas was Hispanic and feared he was stopped for being profiled as a "Mexican." Washington told Salas to exit the van and get into the police car, where he issued Salas a warning for "driving on the left lane," to which Salas agreed out of EXTREME fear. Washington ran Salas' license, got on the radio and asked for a "10-27" and a "10-28," to which the responding officer informed him that there were some "drug charges and resisting arrest." Salas informed Washington that that was not him (Salas). Washington had Salas exit the police car and stand outside in the heat for 30 minutes, after which he demanded Salas' social security number which Salas gave him out of fear.

23.      Washington asked Salas who he worked for. Salas gave him Jorge Vasquez's information, and informed Washington that he was a driver for Vasquez, a licensed international livestock transporter with a Class I license issued by the Texas Animal Health Commission, and that he (Salas) had permits, health papers and other documents to transport domestic animals. Salas attempted to show Washington these documents which Salas had in his phone, Washington refused to look at them. Washington told Salas that he wanted to search the van and for Salas to drive to the nearest gas station that was approximately three miles away, which they did. Washington was then joined by Hopkins County Deputy Corley Weatherford ("Weatherford" – a White officer), and told Salas they were going to search the van. Salas again attempted to show Washington and Weatherford the travel and health documents and permits for the chickens in his phone, but they both refused.

24.     While at the gas station, Washington and Weatherford moved aside to speak amongst each other, then told Salas they were going to search the van.  Out of great fear, Salas agreed. Weatherford asked Salas if he had any drugs or money; Salas replied no, but was coerced into telling Weatherford that he had collectible "short knives" in the center console.  Washington told Salas that that was a Class A misdemeanor, which is false, as ownership of these collectibles are exempt per Texas Penal Code § 42.105(c)(1)(2): "(c)  It is an affirmative defense to prosecution under this section that the actor's conduct:  (1)  occurred solely for the purpose of or in support of breeding cocks for poultry shows in which a cock is judged by the cock's physical appearance; or (2) was incidental to collecting bridles, gaffs, or slashers…"  Weatherford informed Salas that he "did not mind about the short knifes and roosters," that he was looking for "drugs and money."

25.     Weatherford and Washington then escorted Salas as he drove the van to the Hopkins County Jail located at 298 Rosemont, Sulphur Springs, Texas 75482.  At this point, Salas was not told by either Washington or Weatherford that he was arrested or detained.  Once at the jail, officers got four inmates to unload TGBA's 61 chickens in their transportation boxes and put them in a room in the County Jail. Washington and the four inmates then started tearing down the van for about 30-45 minutes.  Salas heard one of the inmates tell Washington that "he is clear he doesn't have anything or it is very well hidden."  Washington told the inmate that "He was not finished yet, and that Washington as going to find it."  Washington proceeded to enter the van and close the doors to the van while the inmates were standing outside the van.  The four inmates then removed the chickens to a different room in the jail. Weatherford or Washington then searched Salas without a warrant, and marched him off to jail overnight in leg restraints – again without telling Salas that he was under arrest, without reading Salas his rights, without an arrest warrant for him, and without an arraignment.

26.     The following morning, Hopkins Sheriff's Department allowed private party Arturo

Munoz from the SPCA to act as a police detective and interrogated Salas.  Munoz demanded that Salas

sign a paper releasing the 61 chickens to Munoz or else go to court and face 20 years in jail.  Salas

signed over the 61 chickens under GREAT duress, threat, intimidation and fear, even though he, Salas,

was not the lawful owner of the chickens.  Salas was released on $2,000.00 bail, and was never given a

receipt for any of the property including the 61 chickens and their travel boxes that were taken by

Washington, Weatherford and Munoz.  The only receipt given Salas was for the $300.00 they took out

of Salas' wallet during their search of him.  Fox 4 News ran a story that night that Salas had "two

cockfighting charges and paraphernalia."   The Sheriffs Department confined Perry's and TGBA's Old

English Gamefowl in their transport cages overnight.  Munoz from the SPCA of Texas in Dallas, who

was not a law enforcement officer, interrogated Salas.  Munoz demanded that Salas "sign over the

chickens" and threatened Salas that if Salas did not "sign over" the chickens he would spend the next

ten years in jail.  Salas was terrified, was over ten hours from his home, so he signed the document

under great duress.  Salas factually had no authority to sign over any of the TGBA's 61 chickens, as he

was not the owner, but was just a driver and employee of Jorge Vasquez.  Neither Munoz, Washington,

Weatherford, Tatum, or anyone else from the Sheriff's Department contacted lawful van owner

Vasquez, lawful chicken owner TGBA, or Steve Perry, although a minimal inspection of the documents

Salas had on his cell phone would have shown the chickens were being lawfully transported by Salas as

an employee of Vasquez.  The SPCA of Texas then removed the chickens from Hopkins County

without a court order.

27.     Salas was then subjected to an extended time of harassment which included several 10-

12 hour trips from Eagle Pass near the Mexican border of Texas to Hopkins County for status/pre-trial

hearings presided over by Judge Amy Smith of the Hopkins County Court of Law.  Each time Salas

was forced to appear in court, he was approached by County Attorney Dustanna Rabe with a "plea-deal." Each subsequent "plea-deal" lowered the penalty against him, until the case was finally dismissed with no charge against him. Salas incurred thousands of dollars of cost to him and his family for nothing, and never saw a judge the entire time.

28.     None of the chickens stolen by Munoz meet Munoz' previously stated criteria for determining "fighting cocks/roosters" which he says includes removal of combs and wattles and trimming of spurs. None of the chickens taken by Tatum, Washington, Weatherford and Munoz were of the breeds used in cock-fighting; none of the chickens were of the age of chickens used in cock-fighting, and hens are NOT used in cock-fighting. Some of the TGBA's chickens had combs removed, which is a requirement for competition of Gamefowl in Poultry Shows per the American Poultry Association's Standard of Perfection, just as when Boxer dogs or Dobermans are shown in dog shows, it is a requirement that their ears be cropped and tails must be docked or they will be disqualified. The TGBA's chickens who had combs removed or "dubbed" were too young and NOT of the age used in cock-fighting – they were ready for the TGBA's and UGBA's upcoming Poultry Shows. The American Poultry Association's Standard of Perfection requires that spurs be trimmed to compete in Poultry Shows, see http://amerpoultryassn.com. There are 1,000 annual poultry shows throughout the country, and 42 different breeds of "Gamefowl" listed as breeds accepted by the American Poultry Association, see http://amerpoultryassn.com/sample-page/apa-breeds-varieties/accepted-breeds-varieties. The American Poultry Association's Standard of Perfection is sold at: https://www.purelypoultry.com/apa-standard-of-perfection-p-686.html.

29.     Vasquez's van was searched and torn up without a warrant. Vasquez was forced to pay to get his van released from impound. His business suffered greatly as a result of this incident.

30. When Perry and the TGBA learned of traffic stop, incarceration of Salas, tearing apart of Vasquez's van by inmates, and theft of chickens by Hopkins County Sheriff's Department, Perry made several calls to the Hopkins County Sheriff's office and to the SPCA of Texas demanding that the chickens be immediately returned, all to no avail. The TGBA immediately sent Sheriff Lewis Tatum a copy of the flyer for the June 24th meeting, along with all the required Texas Animal Health Commission Transport Papers and the Pollurm & Typhoid papers for these chickens. The TGBA and Perry also made several calls to the Hopkins County Sheriff's office and subsequently to the SPCA of Texas demanding the chickens be immediately returned. TGBA/Perry got no response, and likewise got no response to numerous phone calls requesting an incident number, an incident report number, and/or case number and the time and place of the required public hearing mandated by law to be held within ten days of seizing animals under Texas Health & Safety Code § 821.022. TGBA/Perry were informed by both the Sheriff's office and "Christie" of the SPCA of Texas Dallas office there would be no hearing. TGBA/Perry were made to believe that the chickens had been destroyed by the SPCA of Texas. Sheriff Tatum disregarded Texas law requiring him to schedule a hearing in a court of competent jurisdiction regarding seizure of chickens.

31. The TGBA sent a letter dated June 30, 2017 to Kelly Kaslon, Hopkins County Auditor, explaining what happened along with an invoice (No. 170630) in the amount of $1,905, 000.00 (one million nine hundred five thousand dollars) demanding immediate payment in full for the irreplaceable chickens within ten days from the date of the letter and enclosed invoice which was July 10, 2017. Neither Kelly Kaslon, nor anyone from Hopkins County contacted TGBA/Perry regarding the invoice and demand for payment for the chickens – there was no response, objection or rebuttal. However, SPCA of Texas Animal Adoption Receipts clearly show that on July 11, 2017, eleven days after TGBA sent the demand letter and invoice to Kelly Kaslon, and the SPCA, stating the value of the chickens,

Sheriff Lewis Tatum "adopted" 8 (eight) hens from the SPCA, identified as "Animal ID: 155296, 155302, 155303, 155304, 155307, 155308, 155309, and 15531," all under his personal address, in his personal name. Sheriff Lewis Tatum "adopted" these irreplaceable hens one day AFTER the deadline date for payment due listed on the invoice sent to Kelly Kaslon. These 8 (eight) hens are all the mature hens which were stolen by Hopkins County Sheriff's Department on June 20, 2017. The value of these eight hens is $665,000.00 (Six hundred sixty five thousand dollars).

32.     Salas was subsequently charged with "cockfighting" and subjected to an extended time of harassment which included several 10-12 hour trips from Eagle Pass near the Mexican border of Texas to Hopkins County for status/pre-trial hearings presided over by Judge Amy Smith of the Hopkins County Court of Law. Each time Salas was forced to appear in court, he was approached by County Attorney Dustanna Rabe with a "plea-deal." Each subsequent "plea-deal" lowered the penalty against him, until the case was finally dismissed with no charge against him. Salas incurred thousands of dollars of cost to him and his family for nothing.

## CHICKENS DEFINED BY LAW

- **Title 18 U.S.C. § 2311 STOLEN PROPERTY**: "Aircraft" means any contrivance now known … for … flight in the air; "Cattle" means one or more bulls, steers, oxen, cows, … or the carcass or carcasses thereof (any live or dead animal); "Livestock" means any domestic animals (including chickens) raised for home use, consumption, or profit … or the carcasses thereof …

- **Title 18 U.S.C. § 2152 Definitions** "As used in this chapter: The words 'war material' include arms, armament, ammunition, livestock, forage, forest products and standing timber, stores of clothing, air, water, food … The words 'national-defense material' include arms, armament, ammunition, livestock, forage, forest products and standing timber, stores of clothing, air, water, food… [emphasis added]"

- **Title 7 U.S.C. § 2** defines all domestic animals including chickens as agricultural commodities. Commodity is anything of value which can be bought, traded or sold.

- **Title 18 U.S.C. § 3112**: Warrants to seize animals, birds and eggs was repealed in 1981.

- **Title 15 U.S.C. §§ 1-7**: Section 1 forbids anybody from interfering with or restraining the free flow of commodities. Intentional infliction of emotional distress which could affect

business carries a penalty of $1 million under Title 18 U.S.C. Frauds and Swindles, and $10 million under the Hobbs Act and Sherman Anti-Trust.  Title 15 U.S.C. Commerce and Trade provides punishments for anybody committing illegal restraint of trade  (trade being transport and sale of domestic animals, live or dead, animal products, feed, etc.):  "Every person (no exceptions) who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal (use of threat, fear and intimidation to restrain property/rooster/domestic animal ownership) shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000.00 (ten million dollars) if a (municipal) corporation, or, if any other person, $350,000.00."  See also United States v. Juvenile Male, 118 F.3d 1344 (9th Cir. 1997) where RICO jurisdiction was obtained over Defendants' theft of 7 sandwiches and 5 bags of potato chips – items defined by law in the same sections (Title 15 U.S.C. § 1-7, Title 18 U.S.C. § 2311) as chickens, chicken products, eggs, feed, etc.:  "3.  Commerce.  All that is required to establish federal jurisdiction in Racketeer Influenced and Corrupt Organizations Act (RICO) prosecution is showing that individual predicate racketeering acts have de minimis impact on interstate commerce.  18 U.S.C.A. § 1962(d).  4.  Commerce.  To establish de minimis effect on interstate commerce so as to permit exercise of jurisdiction under Racketeer Influenced and Corrupt Organizations Act (RICO), Government need not show that defendant's acts actually affected interstate commerce; rather, jurisdictional requirement is satisfied by proof of probable or potential impact.  18 U.S.C.A. § 1962(d)."

- **Title 18 U.S.C. § 1951** interference with commerce by threats or violence  "Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity…by robbery or extortion or attempts or conspires to do so…shall be fined…or imprisoned not more than twenty years…(2) the term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  [emphasis added]

## FIRST CAUSE OF ACTION

**Violation of Constitution and Civil Rights Title 42 U.S.C. §§ 1981, 1983, 1985(3), U.S. CONST. Amend. 1, 4, 5, 6, 8, 14; False Imprisonment (No Jurisdiction), Kidnapping.  There is no immunity for any Defendant committing the outrageous, vile and, inter alia, despicable acts under color, against Plaintiffs.**
**Title 42 U.S.C. §§ 1981, 1983, 1985(3), 1986;  Title 18 U.S.C. §§ 241-242, 1001, 1201, 1962(c,d), 1621, 1622, 1623, (a)(b)(c)(1)(2);  28 U.S.C.§ 1343(A)(1)(2)(3)(4)**
**Against All Defendants.**

33.     Plaintiffs incorporate here each and every paragraph as set forth above.

34.     On June 20, 2017, Defendants Washington, Weatherford performed an illegal traffic

stop, an illegal search of the white van Salas was driving, forced Salas to drive to the Hopkins County

Jail where they searched him, put him in leg restraints without telling Salas he was being arrested,

without telling Salas he was being detained and without any arrest warrant.  They removed

TGBA's/Perry's eleven banks of transport boxes with the 61 very rare Gamefowl still confined in them, from the white van and placed them in a room in the sally port without a warrant, without a hearing.

35.     Defendants Washington and four inmates of the Hopkins County Jail searched and tore down Vasquez' white van without a search warrant, without a court order, and without consent from Vasquez, the owner.  Washington and Weatherford never contacted Vasquez.  Washington and Weatherford never looked at the transport documents and Class I transport license issued by the Texas Animal Health Commission.  They found nothing in the van, and left it torn apart.  The van was later towed to Tommy Evans garage where it remained in impound until Vasquez was forced, under duress, to pay the impound charges and get his van back.

36.     Defendants Washington, Weatherford, Tatum, and Hopkins County Sheriff Department removed all the transport boxes with the chickens still in them to another location, supposedly in the Jail, without any search/seizure warrant, without any court order.

37.     Salas was forced to remain in custody overnight.  Arturo Munoz appeared the next morning, impressing Salas that Munoz was a law enforcement officer.  Munoz began intimidating and threatening Salas, says that is Salas did not "sign over" the chickens to Munoz, that Salas would spend the next ten years in Jail. Terrified, Salas signed the document.  Tatum allowed Munoz to remove the 61 chickens from the Hopkins County Jail and transport them outside of Hopkins County with no court order allowing him to do so in violation of Tex.Code of Criminal Procedure § 18.10, and without any court order specifying how the chickens were to be cared for in violation of Tex. C ode of Criminal Procedure § 18.11.

38.     Defendants violated Plaintiff Salas Constitutional Rights by incarcerating Salas without a shred of truthful evidence he committed any crime, without ever viewing the transport documents authorizing the lawful transport of the chickens, without ever contacting Plaintiff Vasquez who was

Salas employer and owner of the white van Defendants tore apart with no warrant, court order, or owner permission. Defendants violated Plaintiffs TGBA and Perry's Constitutional Rights by refusing to view the transport documents on Salas' phone, and thereby refusing to ever contact the TGBA or Steve Perry, owners of the 61 very rare Heritage Old English Gamefowl. Each and every defendant named above are not entitled to any immunity for the subject violations described above.

39.    Each and every Defendant, named herein, had knowledge of Plaintiffs transport documents, had opportunity to review the documents, had opportunity to contact transport company owner Vasquez, had opportunity to view the Class I license issued by the Texas Animal Health Commission authorizing Vasquez to transport poultry internationally. The Defendants conspired with each other, organized and planned to conceal information, commit Theft of the chickens and transport boxes, falsely charge Salas, illegally imprison Salas, take Plaintiffs property for the benefit of Defendants Munoz, SPCA of Texas, Tatum, and DOES 1 through 100, in violation of 28 U.S.C. §§ 2409a, 2410. Plaintiffs TGBA and Perry own the 61 very rare chickens outright and as a matter of law. The 61 Heritage Old English Gamefowl are valued at $1,905,000.00; Perry and TGBA Invoiced Defendants for them; Defendants never rebutted or objected to the Invoice for the value of the chickens.

40.    Plaintiffs TGBA/Perry's chickens (property) were taken under illegal seizure and illegal control of the forenamed Defendants and their current whereabouts, status and condition is unknown. These chickens were last seen by Plaintiff Salas, still confined in their transport boxes when they were removed from Vasquez' white van on June 20, 2021. SPCA Adoption Receipts show that at least the 8 (eight) Hens were still alive, as Lewis Tatum adopted them under his own name and his home address. Defendants filed false reports to violate Plaintiff Salas' constitutional rights, falsely imprison him, kidnap Salas, and inter alia, all to take Plaintiffs TGBA and Perry's property.

41.     Each defendant had knowledge that Salas had committed no crime.  Each defendant had knowledge that Salas possessed lawful transport documents on his phone, clearly showing the 61 chickens were being lawfully transported.  Defendants each have a duty to investigate all information, which they intentionally failed/refused to do.   Defendants intentionally caused Plaintiffs deprivation of rights under color and civil rights violations.

42.     Each defendant contributed to Salas' false imprisonment, by kidnapping, by filing false charges, and, inter alia, violating TGBA and Perry's rights over their property (chickens) without probable cause and no jurisdiction, forced Salas to remain in jail overnight, forced Salas to endure intimidation from Munoz, and eventually forced Salas to "sign over" the chickens under duress by threat of ten years of incarceration.

43.     Defendants falsified reports, manufactured false charges, and unlawfully detained Salas to the county jail,  Each Defendant had knowledge of each others part in the scheme to fabricated charges against Salas, and to allow Munoz to take TGBA's and Perry's 61 very rare chickens.

44.     Defendants violated plaintiffs' rights guaranteed by the First and Fourteenth Amendments enacted to secure plaintiff's rights to equal protection and right to petition for redress of grievances.  Defendants committed illegal judicial acts, falsely charge Salas, incarcerated him, and fined him $2,000.00 bail, where defendants knew that they had no jurisdiction.

45.     This is a verified complaint.  Plaintiffs request that any answer or reply be verified by defendants.  For civil rights violations under color of law, Plaintiffs are seeking ten million dollars ($10,000,000.00) for pain and suffering, intentional causation of distress, hardship, loss, and damages, rights violations, theft, racketeering and extortion.  Plaintiff asks that this court issue and order to have defendants immediately terminated from their positions of employment and be prosecuted to the full extent of the law for their violations of Plaintiffs Constitutional Protections and federal laws.

46.     Plaintiffs request that this court issue Orders that defendants Washington, Weatherford, Tatum, Munoz, Rabe and Smith compensate Plaintiff Salas $300,000.00 for the day they put Salas in harm's way in the county jail, where he was in fear of his life.

47.     Plaintiffs request that HOPKINS COUNTY, HOPKINS COUNTY SHERIFF DEPARTMENT, and the SPCA OF TEXAS compensate them $5,000,000.00 for fraud, theft aiding and abetting. Additionally, Plaintiffs TGBA and Perry request that this Court issue Orders that Plaintiffs TGBA and Perry be compensated $300,000.00 per day for each day they have been denied their chickens since June 20, 2017.

48.     Plaintiffs TGBA and Perry request that this court issue Orders that defendants Washington, Weatherford, Tatum, Munoz, Rabe, and Smith compensate Plaintiffs TGBA and Perry $10,000,000.00 each for aiding and abetting, fraud, civil conspiracy, and for conspiring with each other to deny Plaintiffs of their property (61 chickens), and to steal Plaintiffs property (61 chickens and 11 banks of transport cages) in part by filing false documents, and by the use of false charges to get Plaintiff Salas incarcerated and out of the way.  All defendants had knowledge that their acts were illegal.  For Defendants' fraud, conspiracy, aiding and abetting, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## SECOND CAUSE OF ACTION

**Conspiracy against rights under color, deprivation of rights under color, Discrimination, Hate Crimes, Bad Faith (Title 18 U.S.C. §§ 241, 242)**
**Against all Defendants**

49.     Plaintiffs incorporate here each and every paragraph as set forth above.

50.     Washington and Weatherford arrested and charged Salas without a warrant, without reading him his rights, searched him without a warrant, and profiled him because he was Hispanic and

wore a baseball cap from Mexico, and conspired with Tatum and Munoz to commit felony grand theft

of valuable chickens.  Washington filed false charges against Salas without standing or authority.

Smith and Rabe continued the malicious prosecution and conspiracy, civil rights violations,

racketeering and extortion, and conspiracy with private parties Munoz and SPCA to launder stolen

property.  Smith and Rabe had knowledge and ability to prevent, but sat idly by in breach of their duties

to provide just and fair seeking of the truth, breached their oaths to uphold the Constitution, and thus

violated all Plaintiffs' civil rights by permitting racketeering, extortion.  For Defendants' fraud,

conspiracy, aiding and abetting, racketeering, and violation of civil rights, Plaintiffs are seeking $1

Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.


### THIRD CAUSE OF ACTION

**Interference with Commerce, Illegal Restraint of Trade (Hobbs Act, Sherman Anti-Trust, Title 15
U.S.C. §§ 1-7, Title 18 U.S.C. § 1964)
Against All Defendants**


51.     Plaintiffs incorporate here each and every paragraph as set forth above.

52.     Defendants violated Sherman Anti-Trust, Hobbs Act and state and federal law

prohibiting illegal restraint of trade.  Not just the chickens, chicken cages, chicken feed, but Vasquez's

and Salas' travels on the road – the fuel they purchased for their vehicles, the stops they made to pay

for a motel room overnight, the restaurants they visited along the way to eat – ALL items and

commodities in interstate trade that were restrained and affected by Defendants' acts against Plaintiffs

consisting among other things false arrest and imprisonment, illegal search and seizure, extortion,

racketeering, transporting stolen property, laundering stolen property and receiving stolen property.

53.     For Defendants' interference with the free flow of commodities/chickens in commerce,

interference with Vasquez's and Salas' commerce while traveling (fuel, road food, motel rooms, etc.),

racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00)

from each of these Defendants for this cause of action.

## FOURTH CAUSE OF ACTION
### Theft; Theft of Livestock (Title 18 U.S.C. § 667), receiving stolen property, transporting stolen property, laundering stolen property
### Against All Defendants

54.     Plaintiffs incorporate here each and every paragraph as set forth above.

55.     There is no doubt that BUT FOR Defendants acts committed under color, over $1

million in rare, heritage chickens would not have been stolen and laundered through a private party,

then gifted back to Tatum – a unique kickback.

56.     For Defendants' theft of Plaintiffs' valuable chickens and laundering them through the

SPCA, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars

($1,000,000.00) from each of these Defendants for this cause of action.


## FIFTH CAUSE OF ACTION

### Fraud and Swindle (Title 18 U.S.C. §§ 1343, 1346)
### Against All Defendants

57.     Plaintiffs incorporate here each and every paragraph as set forth above.

58.     There is no doubt that FRAUD was used by all Defendants to fabricate false charges

against Salas to justify theft and swindling Plaintiffs out of their valuable rights and chickens.  Rights

have value and must b compensated per Black's Law Dictionary 4th Edition, definition of PROPERTY.

Defendants used their positions of public employ to fraudulently swindle Plaintiffs out of property and

rights.

59.     For Defendants' theft of Plaintiffs' valuable chickens and laundering them through the SPCA, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## SIXTH CAUSE OF ACTION

### Denial of Intangible Right to Honest Services (Title 18 U.S.C. § 1346)
### Against All Defendants

60.     Plaintiffs incorporate here each and every paragraph as set forth above.

61.     Defendants except Munoz swore Oaths to uphold the Constitution, and failed to do so, which cheated Plaintiffs out of their intangible rights to honest services – to have due process, to have fair investigations, to have neutral and detached Magistrate interposed between Plaintiffs and police, to have hearings and just compensation BEFORE any takings of property.

62.     For Defendants' deliberate and malicious denial of Plaintiffs' intangible rights to honest services from defendant police and judicial officers who instead engaged in racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action

## SEVENTH CAUSE OF ACTION

### Fraud, Aiding and Abetting, Civil Conspiracy
### Against All Defendants

63.     Plaintiffs incorporate here each and every paragraph as set forth above.

64.     Defendants aided and abetted each other in a conspiracy to falsely charge Salas, steal valuable domestic animals, uphold false charges, hold Vasquez's van to extort money from him, and launder stolen property – all conduct OUTSIDE their duties prescribed by law.

65.     For Defendants' fraud, aiding and abetting, conspiracy with each other, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## EIGHTH CAUSE OF ACTION

### Malicious Prosecution
### Against All Defendants

66.     Plaintiffs incorporate here each and every paragraph as set forth above.

67.     Defendants maliciously prosecuted Salas and profiled him as a "cock fighter" because he was transporting a particular breed of chicken, wore a particular baseball cap, was a particular race, and owned particular collectibles – which is all fruit of the poison tree.  This malicious prosecution of Salas was designed by Defendants to justify theft of livestock, racketeering and was done with deliberate intent and violated all Plaintiffs' due process and civil rights.  All charges against Salas were dropped.

68.     For Defendants' malicious prosecution, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## NINTH CAUSE OF ACTION

### Legal Malpractice
### Against All Defendants

69.     Plaintiffs incorporate here each and every paragraph as set forth above.

70.     Washington committed legal malpractice when he filed charges against Salas when he was NOT the district attorney, did not have written authorization from the district attorney, questioned Salas without an attorney present, searched him without a warrant aided and abetted by Weatherford

and Tatum, never Mirandized Salas, never investigated, never obtained a court order to seize chickens. Tatum committed legal malpractice by condoning Washington's and Weatherford's behavior, and be allowing Munoz to impersonate an officer.  Miller and Rabe committed legal malpractice by failing to perform any probable cause hearings, and instead using threat, fear and intimidation to try to force Salas to take a "plea deal" when Salas was 100 percent innocent and all charges were finally dropped. Miller and Rabe committed legal malpractice by upholding and perpetuating Salas' charges based on inadmissible police opinion.

71.     For Defendants' legal malpractice, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## TENTH CAUSE OF ACTION

### Racketeering, Extortion, Theft, Threat, Fear and Intimidation Title 18 U.S.C. §§ 1951-1964
### Against All Defendants

72.     Plaintiffs incorporate here each and every paragraph as set forth above.

73.     See preceding.  For Defendants' racketeering, use of threat fear and intimidation against Plaintiffs, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment
### Against All Defendants

74.     Plaintiffs incorporate here each and every paragraph as set forth above.

75.     Defendants seized over $1 million in rare and endangered chickens without due process, without a court order, then Tatum received 8 hens AFTER he received an Invoice from the TGBA which detailed the actual value of the chickens.  Plaintiffs were NEVER compensated for their loss.

76.     For Defendants' unjust enrichment, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## TWELFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### Against All Defendants

77.     Plaintiffs incorporate here each and every paragraph as set forth above.

78.     Defendants knew that in a free country, all men are innocent until proven guilty.  But that is NOT how Defendants treated Salas.  Defendants' malicious treatment of Salas was intentional, and inflicted great emotional distress not only upon Salas but upon Perry, the TGBA and Vasquez as well.

79.     For Defendants' intentional infliction of cruel and unusual punishment, deliberate infliction of emotional distress, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## THIRTEENTH CAUSE OF ACTION

### Illegal Arrest, Detainment, Incarceration without just cause
### Against All Defendants

80.     Plaintiffs incorporate here each and every paragraph as set forth above.

81.     Defendants' arrest and incarceration of Salas was illegal, as there was no search warrant, no arrest warrant, and no other due process.   Salas was not arraigned, was not read his rights, and when he was compelled to appear in court 500 miles from his home to fight the false charges, he never saw a judge but was taken in a back room and pressured to take a plea deal which he refused, so charges were dropped.

82.     For Defendants' illegal, warrantless detainment and incarceration of Salas, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## FOURTEENTH CAUSE OF ACTION

### Violation of Protected Rights; Violation of Texas Health & Safety Code §§ 821.021 et seq.; 821.022; 821.023; and especially 821.023(g). Against All Defendants

83.     Plaintiffs incorporate here each and every paragraph as set forth above.

84.     Defendants seized Plaintiffs' valuable chickens without due process, then failed to provide proper care for them as outlined previously.

85.     For Defendants' intentional violation of Texas law, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

## FIFTEENTH CAUSE OF ACTION

### Violation of Texas Health & Safety Code § 821.003 Against All Defendants

86.     Plaintiffs incorporate here each and every paragraph as set forth above.

87.     For Defendants' intentional violation of Texas law, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

**SIXTEENTH CAUSE OF ACTION**

**Intentional Animal Cruelty - Tex. Penal Code § 42.09(a)(1); failure to provide necessary food, water, or care (Class A, Tex. Penal Code § 42.09(a)(2); 61 chickens confined in a cruel manner in transport boxes overnight which caused unjustified or unwarranted pain or suffering for the 61 chickens, (Class A, Tex. Penal Code § 42.09(a)(4), § 42.09(b)(2)**
**Against All Defendants**

88.     Plaintiffs incorporate here each and every paragraph as set forth above.

89.     For Defendants' intentional violation of Texas law, racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.

**SEVENTEENTH CAUSE OF ACTION**

**Accounting**
**Against All Defendants**

90.     Plaintiffs incorporate here each and every paragraph as set forth above.

91.     Perry repeatedly requested information and documents from Defendants, such as incident number, an incident report number, and/or case number and the time and place of the required public hearing mandated by law to be held within ten days of seizing animals under Texas Health & Safety Code § 821.022.  Defendants had a duty and were required to disclose this if they were on the up and up, but failed to do so.  Defendants failed to disclose OTHER required documents and forms: TEXAS Information Statement Form UCC5 (Rev. 07/19/12) pertaining to "taking" of property/chickens for collateral, Form OBM No. 1124-0005, exp. 5/31/2020 Short Form Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, form Expropriations Title 50 U.S.C. Sec 1605(a)(3) "taking" seized property, file (OFAC) Office of Foreign Assets on Form TD-F 90-22-50 report of all seizures, forfeitures, chickens, rights, tangible and intangible personal items of Claimants, 990 Forms for budgeting the takings of chickens and the bundle of rights that go with each

chicken; Form OMB Number 4040-0001 Application for Federal Assistance SF 424 (R & R),

interagency agreements, Form OMB Number 4040-0004 Application for Federal Assistance SF-424,

Form OMB Number: 4040-0006 BUDGET INFORMATION – Non-Construction Programs (Standard

Form 424A Prescribed by OMB (Circular A – 102);  Form OMB Number 4040-0011 Outlay Report

and Request for Reimbursement for Construction Programs,  Form OMB Number 4040-0012 Request

for Advance or Reimbursement,?  Form OMB Number 9000-0045 (Standard Form 25A Prescribed by

GSA-FAR (48 CFR) 53.228(a)) Bid Bond,  Form OMB Number 9000-0045 Performance Bond

(Standard Form 25 Prescribed by GSA-FAR (48 CFR) 53.228(b)),  Form OMB Number 9000-0045

(Standard Form 25A Prescribed by GSA-FAR (48 CFR) 53.228(c)) Payment Bond,   SF 275

(Prescribed by GSA-FAR (48 CFR) 53.228(j))  Form OMB Control Number 9000-0045  Reinsurance

Agreement in Favor of the United States;   Form HHS-5161-1 OMB Approval No.: 0990-0317

Checklist,  Standard Form 1081 Department of the Treasury 1 TFRM 2-2500  Voucher and Schedule of

Withdrawals and Credits  (NSN 7540-00-634-4234),   Standard Form 1414 Consent of Surety

(Prescribed by GSA – Federal Acquisition Requisition (48 CFR) 53.228(k)),  Standard Form 1415

Consent of Surety and Increase of Penalty (Prescribed by GSA – FAR (48 CFR) 53.228(l)),  FBAR &

IRS Form 8938 Organizer for:  (1)  "Report on Foreign Bank and Financial Accounts,  (2)  (FinCEN

Form 114 (formerly Form TD F 90-22.1) – "FBAR"), and  (3)  "Statement of Specified Foreign

Financial Assets,"  IRS Form 56 Notice Concerning Fiduciary Relationship,  IRS Form 990 Return of

Organization Exempt From Income Tax,  FS FORM 7600B (IAA) Order Requirements and Funding

Information (Order) Section,   Standard Form LLL (Approved by OMB 0348-0046)  Disclosure of

Lobbying Activities 31 U.S.C. § 1352, IRS Form 3115 Change in Accounting,  TEXAS –

APPROPRIATIONS/ JUDICIAL APPROPRIATIONS – S/C ON BUDGET TRANSPARENCY &

REFORM Judicial's budget exactly where, when, how all private property and chickens are taken by

County agents for Hopkins County; and Court Registration and Investment System (CRIS) documents detailing all financial transactions and accounts including Fidelity Mutual and Escrow agencies in Chicago, New York and Europe securitizing and trading Jose Manuel Salas' name, social security number and booking number (case no.) in order that Salas can share in the proceeds.

92.     For Defendants' failure to provide a COMPLETE and FULL accounting, for Defendants' racketeering, and violation of civil rights, Plaintiffs are seeking $1 Million Dollars ($1,000,000.00) from each of these Defendants for this cause of action.


## PRAYER FOR RELIEF

WHEREFOR Plaintiffs pray for the following:

1.     For Defendants' violation their Oaths of office, for committing criminal conduct under color, Plaintiffs are asking $1,000,000.00 from each Defendant,

2.     For fraud, Fraudulent Documents – Plaintiffs are asking $1,000,000.00 from each Defendant,

3.     For violation of Plaintiffs' Constitutional Rights and Civil Rights Title 42 U.S.C. §§ 1981, 1983, 1985(3), U.S. Const. Amend. 1, 4, 5, 6, 8, 14 l – Plaintiffs are asking $1,000,000.00 from each Defendant,

4.     For Hate Crimes, Discrimination, Harassment – Plaintiffs are asking $1,000,000.00 from each Defendant,

5.     For intentional Infliction of Emotional Distress – Plaintiffs are asking $1,000,000.00 from each Defendant,

6.     For Bad Faith, Malice, Unclean Hands – Plaintiffs are asking $1,000,000.00 from each Defendant,

7.      For accounting from each Defendant – Plaintiffs are asking $1,000,000.00 from each

Defendant,

8.      For Racketeering Title 18 U.S.C. §§ 1962(A)(B)(C)(D), 1963, 1964 – Plaintiffs are

asking $1,000,000.00 from each Defendant,

9.      Request for punitive damages,

10.     Request for special damages for Defendants violations contained in each cause of action,

11.     For costs of this lawsuit, and

12.     For any other relief this Court finds is just and proper.


## VERIFICATION Title 28 U.S.C. § 1746

STATE OF TEXAS, COUNTY OF BRAZOS

I, Steve Perry, have read the foregoing VERIFIED COMPLAINT FOR DAMAGES AND DEMAND

FOR JURY TRIAL, and know its contents.

I am a party to this action.  The matters stated in the foregoing document are true of my own

knowledge and experience.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and

correct.


DATED: ___6 -18-3⁴___                    _____

Steve Perry
P.O. Box 235
Sutherland Springs, TX 78161
(979) 220-0535